**In re Robert Raye CARTNER a/k/a Robert R. Cartner, Debtor.**

**Janet T. CARTNER, a/k/a Janet N. Turbeville, Plaintiff,**

**v.**

**Robert Raye CARTNER a/k/a Robert R. Cartner, Defendant.**

**Bankruptcy No. 80–0376.**

United States Bankruptcy Court, M. D. Alabama.

Jan. 19, 1981.

Opinion and Order on Motion for Rehearing Feb. 19, 1981.

544

Joel Nomberg, Dothan, Ala., for plaintiff.

Thomas E. Haigh, Enterprise, Ala., for defendant.

## OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY

RODNEY R. STEELE, Bankruptcy Judge.

On December 9, 1980, the Plaintiff filed a Complaint against the Defendant in which she seeks to have this Court determine that four debts listed in the Complaint are non-dischargeable because they are alimony or support or maintenance payments to her, granted to her under a Decree of Divorce entered on February 20, 1980, in the Circuit Court of Dale County, Alabama.

By a Summons and Notice of Trial entered on December 29, 1980, the Complaint was set to be heard in Dothan, Alabama on January 14, 1981. Notice was supplied to the Debtor and his attorney, to Trustee, and to the Plaintiff's attorney.

On December 31, 1980, the Defendant answered denying the material allegations of the Complaint.

At the appointed time and place the Complaint was called in accordance with the notice. Present was the Plaintiff and her attorney, and the Defendant and his attorney.

Testimony was taken from the Plaintiff and the Defendant.

The questions presented by this Complaint and Answer are:

1. Under Section 523(a)(5) of the Bankruptcy Code of 1978 (11 U.S.C. § 523(a)(5)) must alimony or maintenance and support payments be made directly to the spouse or owed directly to the spouse before that debt is non-dischargeable under the provisions of the Bankruptcy Code.

2. Are the payments which the Defendant undertook to pay and was obliged to pay under the Decree of Divorce to Associates Financial Services, Army Aviation Center Federal Credit Union, Pentagon Federal Credit Union, and Household Finance Company, debts which constitute in fact alimony or support and maintenance payments to the Plaintiff so that the Defendant is not discharged of these debts by the entry of the Order of Discharge.

Because we have concluded as below set out that the debts in question here are not alimony or support and maintenance payments, it is unnecessary to treat the first

question, that is whether such payments are due to be made directly to the spouse.

The facts may be made summarized as follows:

Janet Nell Turbeville and Robert Raye Cartner were married in June of 1974. They were divorced on February 20, 1980. Robert Raye Cartner is in the United States Army and was for a considerable time during the marriage stationed in Korea.

There were no children born of this marriage. The marriage was the first for Janet Nell Turbeville, but was the second marriage for Robert Raye Cartner, who has one ten year old child by his first marriage. He has since the divorce on February 20, 1980 remarried.

Except for about six months of the marriage, Janet N. Turbeville was employed at Fort Rucker and at the time of the divorce had a gross income of $9,615.00. Robert Raye Cartner had income from Army pay and allowances of about $11,000.00. These are yearly income figures.

At the time of the divorce the divorce agreement reached by the parties provided that the wife should receive a 1977 Chevrolet automobile, the house and lot purchased by the husband and wife and the furniture and furnishings in that house.

The 1977 Honda motorcycle became the property of the husband as well as all of his clothing, his hunting and fishing gear, and mechanics tools.

The wife undertook to pay for the home and the Malibu automobile and the husband agreed to pay the joint debts owing by the parties to Associates Financial Services, the Army Aviation Center Federal Credit Union on an account numbered 21316–010, and the Pentagon Federal Credit Union. The husband further agreed to assume all debts not otherwise provided for which had been incurred during the marriage. The wife was to assume and pay a separate debt to the Army Aviation Center Federal Credit Union which she had incurred on her own, being numbered account number 22393–017.

This separation agreement was incorporated in the Decree of Divorce entered on February 20, 1980.

We cannot conclude that the undertakings in this separation agreement constituted alimony, or support. It was clearly a property settlement in which there was a division of the property and a division of the debts relating to that property. The parties had substantially the same income. There were no children to support.

The case is remarkably similar to *In Re Williams, Debtor, Williams v. Gurley*, 3 B.R. 401 (1980), U.S. Bktcy. Ct., N.D.Ga., 1980. The factual situation in that case is almost identical. The conclusion of the Court there is that, "These parties did not intend that the Plaintiff support or maintain the Defendant. The Defendant at the time of the divorce was young, healthy, employed and without dependents. It would have been unusual in such circumstances for a court to have awarded maintenance or support to her." We find and conclude as did the Court in that case that the debts in question are not actually in the nature of alimony, maintenance or support within the meaning of 11 U.S.C. § 523(a)(5)(B), but arose from a division of debts as well as a division of property and is therefore dischargeable in bankruptcy. Cf. *In Re Spong, Debtor, Paulie v. Spong*, U.S. Bktcy. Ct., W.D.N.Y., 1980, 3 B.R. 619 (1980).

We do not therefore reach the question of whether the debts sought to be determined non-dischargeable must have been payable to or owed to the spouse directly, since we have concluded that even if it was required to be paid to the spouse directly, in this case it would not have constituted a debt for alimony or support.

An appropriate Order will enter.

## OPINION AND ORDER ON MOTION FOR REHEARING

On January 19, 1981, this Court entered an Opinion and Order in which it determined that certain debts owed by the Defendant were discharged in bankruptcy, and that his obligation to pay those debts, cast upon him by a Decree of Divorce between himself and the Plaintiff, was dischargeable in bankruptcy.

By a Motion for rehearing filed on January 27, 1981, the Plaintiff moves for a reconsideration on the grounds that the Court erred in its conception of the law and that the determination had been made on January 19, 1981, without the benefit of counsels' briefs on the law and its application to the particular facts in this case.

On January 28, 1981, the Court entered an Order granting the rehearing and the matter was submitted upon briefs on February 11, 1981 at Dothan.

In the January 19 Order, this Court concluded that the separation agreement approved by the Circuit Court of Dale County, Alabama on February 20, 1980, did not embody a provision for alimony and support and that the debts incorporated in that agreement and decree were therefore dischargeable.

The thrust of the arguments made in brief on this Motion for Rehearing is that regardless of what the provisions in an agreement and Divorce Decree may be called, if the payments, including payments of joint debts, for furniture, household goods and the like are actually for the relief of the wife or spouse so that the purpose of such agreement and decree is to provide for wife's sustenance, then the payments required to be made by such agreement and decree are in fact alimony or in lieu of alimony and therefore ought to be non-dischargeable.

To resolve the question of whether provisions for the payment of debts in a Decree of Divorce constitute alimony, it is important to keep in mind that the question is now a Federal question. Not only is it controlled, in this case by the provisions of the Bankruptcy Code of 1978 § 523(a)(5), but it is a question which must be independently determined by the Bankruptcy Court construing that provision of the Code.

In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, the Court had occasion to talk about Congress' purpose in amending section 17 of the Bankruptcy Act of 1898 which empowered Federal Bankruptcy Courts to determine questions of dischargeability. The Court wrote, [at page 136, 99 S.Ct. at 2211]:

> . . . A secondary purpose however, was to take these Section 17 claims away from state courts that seldom dealt with the Federal Bankruptcy laws and to give those claims to the Bankruptcy Court so that it could develop expertise in handling them. By the express terms of the Constitution, Bankruptcy law is Federal law, U.S. Constitution, Article I Section 8, Clause 4, and the Senate report accompanying the amendment described the Bankruptcy Court's jurisdiction over these Section 17 claims as 'exclusive'. . . .

Refusing to apply res judicata here would permit the Bankruptcy Court to make an accurate determination whether respondent in fact committed the deceit, fraud, and malicious conversion which petitioner alleges. These questions are now for the first time squarely in issue. They are the type of questions Congress intended that the Bankruptcy Court would resolve. That Court can weigh all the evidence and it can also take into account whether or not petitioner's failure to press these allegations at an earlier time betrays a weakness in his case on the merits.

We read this case then to require that the Bankruptcy Court make an accurate determination on questions squarely in issue, in this case, whether the agreement and the decree which incorporates it in Dale County, constitute a debt which is actually in the nature of alimony, maintenance or support. See Section 523(a)(5) of the Bankruptcy Code of 1978.

In reaching that independent conclusion, the Court may examine pertinent authorities, not only from Alabama but from other jurisdictions, concerning what alimony really is.

And we have examined those cases cited by Counsel from Alabama and from other jurisdictions, relating to what alimony really is.

We have also examined the case of *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d

306, which case, although not directly in point, sheds some important light upon the modern conception of alimony and its purposes.

In discussing the place of alimony in Alabama's Statutes regulating family responsibilities, the Supreme Court wrote:

Appellant views the Alabama Alimony Statutes as effectively announcing the State's preference for an allocation of family responsibilities under which the wife plays a dependent role and as seeking for their objective the reenforcement of that model among the State's citizens . . . we agree as he urges that prior cases settled that this purpose cannot sustain the Statutes. *Stanton v. Stanton*, 421 U.S. 7, 10, 43 L.Ed.2d 688, 95 S.Ct. 1373 (1975), held that the 'old notion' that 'generally it is the man's primary responsibility to provide a home and its essentials can no longer justify a statute that discriminates on the basis of gender.' 'No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas.' . . . .

The Supreme Court went on to point out that the opinion of the Alabama Court of Civil Appeals in its decision in *Orr v. Orr*, suggested other purposes that the Alabama Alimony Statute might serve. The Alabama Court opinion stated that "the Alabama Statutes were designed for the wife of a broken marriage who needs financial assistance." Two purposes appeared from this quotation. One, that it was a legitimate legislative purpose to provide help for needy spouses. The other purpose was a goal of compensating women for past discrimination during marriage, which has left them unprepared to fend for themselves in the working world following divorce.

The Court went on to recognize that these were legitimate legislative purposes which might be advanced by an impartial law.

Adopting these two purposes as a preliminary test to determine whether the provisions in the Dale County Divorce Decree are alimony, we must reach the same conclusion which we reached in our Order of January 19, 1981. The wife in this case was not shown to have needed any additional support or sustenance. She was awarded the homeplace of the marriage, and the automobile which had been acquired during the marriage. She had a job which grossed her almost as much as the Defendant. She had lived separate and apart from the Defendant while he was in Korea during most of the marriage. There were no children of the marriage. She had no other dependants. The Debtor on the other hand did have other dependants, a 10 year old child by a prior marriage. The debts from aught that appeared were debts jointly incurred during the marriage. In short, the wife was not shown to have been disadvantaged by the marriage or its break-up and there is no showing that she suffered in the market place in obtaining a job because of any dependent position which she held in relation to her husband or her place as a wife in this marriage.

In short, the conclusion must be the same finally, and that is, that the arrangements between the Plaintiff and the Defendant in this case was not an arrangement by which alimony was to be extended to the wife, was not for her relief, and was an agreement by which property and debts were divided and a mutual agreement made for the manner in which those debts were to be disposed of.

It is therefore ORDERED that the Motion for Reconsideration or Rehearing is hereby determined in favor of the Defendant and against the Plaintiff in this case and the Order of the Court entered on January 19, 1981, is hereby confirmed.