In re Henry Ludwig VOGT, Jr., Debtor.

Henry Ludwig VOGT, Jr., Plaintiff,

v.

Kayheighe A. VOGT, Defendant.

Bankruptcy No. 80–00433.
Adv. No. 80–0098.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

Oct. 20, 1981.

Henry Counts, Jr., Alexandria, Va., for defendant.

Stephen H. Glickman, Washington, D.C. and Bruce Goldstein, Arlington, Va., for plaintiff/debtor.

Thomas J. Stanton, Alexandria, Va., Trustee in Bankruptcy.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

This matter came on for hearing on the Complaint of Henry Ludwig Vogt, Jr., the debtor herein, to determine whether an award to his ex-wife, Kayheighe A. Vogt, the defendant, in their divorce decree of a 9¼-/26th interest in his net military retirement income receipts constitutes a nondischargeable debt. The sole issue before the Court is whether this debt constitutes alimony, maintenance or support, or is a property division between the parties.

The debt in question arose as a result of a decree granting a divorce between the parties by the Family Court of the First Circuit, State of Hawaii. This decree, which was entered on March 23, 1977 contains two provisions relevant to this matter: (1) Section 6 entitled "Periodic Alimony" and (2) Section 9 entitled "Disposition of Property".

Under the periodic alimony section, the debtor was required to pay the defendant $100.00 per month pending the sale of their jointly-owned residence. Upon sale of the aforesaid residence, the plaintiff was required to pay the defendant the sum of $400.00 per month as periodic alimony until such time as the debtor retired from active duty in the United States Navy.

Pursuant to the disposition of property section, the defendant was awarded:

"A 9¼-/26th interest in and of Plaintiff's [debtor] net military retirement income receipts, payment of which shall begin as of the date on which Plaintiff becomes entitled to receive said retirement payments; that Defendant shall receive money equal to said 9¼-/26th interest in Plaintiff's retirement pay as income and in respect thereto she shall pay the Federal and State income tax obligations which relate to the money which she shall receive; that said payments shall terminate in the event of Defendant's death of [sic] in the event of the decease of Plaintiff."

The plaintiff, who retired from active service in the Navy on July 1, 1980 (after twenty-six years in service), contends that this debt is dischargeable under Section 523(a)(5)(B) of the Bankruptcy Reform Act of 1978 ("Bankruptcy Code"). This section excepts from discharge any debt:

"(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that— ....

"(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support."

While no definition of the term "alimony" has been included in the Bankruptcy Code, this term, nevertheless, is well-established in case law. Fundamentally, alimony arises from "the natural and legal duty of

the husband to support the wife." *Audubon v. Shufeldt*, 181 U.S. 575, 577, 21 S.Ct. 735, 736, 45 L.Ed. 1009 (1901). The courts which have considered this question have consistently found that "it is the obligation based on this duty which is saved from discharge in bankruptcy." *Norris v. Norris*, 324 F.2d 826, 827 (9th Cir. 1974) *citing Wetmore v. Markoe*, 196 U.S. 68, 76, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904).

■ Notwithstanding the labels placed on the provisions within a divorce decree by a state court, it is for this Court to make an independent determination as to what constitutes alimony, maintenance, or support for purposes of dischargeability in accordance with a federal standard. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 364 (1977) *reprinted in* [1978] U.S. Code Cong. & Ad. News, pp. 5787, 6320. Thus, payments made to the non-debtor spouse will be considered alimony if they are actually in the nature of support for the non-debtor spouse. *Cartner v. Cartner*, 9 B.R. 543, 546 (Bkrtcy.M.D.Ala.1981) *citing Brown v. Felsen*, 442 U.S. 127, 136, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767 (1979). The burden of proof is on the plaintiff inasmuch as he is the party asserting that the debt is dischargeable.

■ In reaching such a conclusion it is appropriate for the Court to examine applicable state law and other pertinent authorities to ascertain the incidents of an award in order to determine whether such an award meets the federal standard for alimony.

Section 580–47 of the Hawaii Revised Statutes (1976 Repl.) which governed at the time the divorce decree was entered, made provision for alimony payments to the recipient spouse. In providing for a just and equitable support award, this statute states:

"[T]he court shall take into consideration the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case...."

The plaintiff avers that it is the practice in Hawaii to award rehabilitative alimony following the divorce until the recipient has had sufficient time to become self-supporting.' He contends that this is the reason for the finite duration of periodic alimony awarded in Section 6 of the decree. The plaintiff explains further that it was on this basis that the payments addressed in Section 9(b)(8) of the decree (to be commenced upon his retirement, which allegedly was anticipated to commence within three (3) years), must be considered as a property settlement rather than in the nature of alimony, support or maintenance.

In support of this proposition, the plaintiff relies upon a deposition *de bene esse*, taken of Robert G. Hogan, Esquire, admitted into evidence as plaintiff's Exhibit 1. Hogan is licensed to practice law in Hawaii and represented the plaintiff in his divorce proceeding against the defendant. Hogan stated that Hawaii does not favor long-term alimony awards. Rather, the practice in Hawaii, according to Hogan, is to award "rehabilitative alimony" over a relatively short period of time (six months to four years) following the marital dissolution so as to provide the recipient with an opportunity to become self-sufficient. The plaintiff contends that for this reason the periodic alimony provisions found in Section 6(b) of the divorce decree were to terminate upon his retirement from active military service.

■ A review of the Hawaii statute in effect at the time of the entry of the decree apparently provides for alimony of limited duration pending the recipient's ability to become self-sufficient. Hawaii Revised Statute § 580–47, *supra*. The plaintiff would have the Court reach the conclusion, based upon this statute, that the placement of the retired pay receipts in the property settlement section (as opposed to the alimony section) dictates a finding that the former is not in the nature of alimony. Yet, it is the intention of the parties which is controlling rather than the characterization of separate provisions of the decree, putative

local practice notwithstanding. As noted above, it is incumbent upon the Court to examine "the basis for creation of the obligation which [, in turn, may assist the Court in] determin[ing] whether it was intended as an equalization of property rights or as support and maintenance." *In re Tilmon*, 9 B.R. 979, 988 (Bkrtcy.N.D.Ill.1981).

In support of the proposition that the parties intended Section 9(b)(8) of the decree to be in the nature of a property settlement, the plaintiff first asserts that although the defendant's alimony payments were to terminate upon her remarriage, this was not the case with respect to her share of the plaintiff's retirement pay receipts. This, he contends, is indicative of the fact that the latter payments were not in the nature of alimony, maintenance or support.

■ The plaintiff correctly notes that the remarriage of the recipient spouse is one factor, among others, to be evaluated in determining whether payments specified in the decree may properly be considered alimony as opposed to a property settlement. This factor, standing alone, is certainly not dispositive in the present case however. In fact, a debt may be found nondischargeable notwithstanding the fact that the payments in question, as incorporated into a final divorce decree, would not terminate upon the recipient spouse's remarriage. *In re Albin*, 591 F.2d 94, 97 (9th Cir. 1979).

■ In the case at bar, it is significant that Section 9(b)(8) of the decree provides that in the event of the defendant's death payments from the plaintiff's retirement receipts would immediately terminate. This is supportive of the view that such payments are in the nature of alimony. As noted in one well-recognized treatise, "[t]he basic idea of alimony is that it is an allowance for the support of the wife; and where it takes the form of stated payments, it is therefore terminated upon the death of the wife, since the object for which it was granted no longer exists." 24 Am.Jur.2d,

*Divorce and Separation*, § 644 (1966). While alimony payments generally terminate upon the recipient spouse's death, the terms of a property settlement (unless expressly provided otherwise) will bind the estates of both spouses. *Id.* at § 883. In the instant matter, the divorce decree contains no such express provision to bind their respective estates upon the death of one of the spouses.

A review of the divorce decree reveals that payments under Section 9(b)(8) were to be made on an installment basis over a substantial period of time. This, too, is supportive of a finding that the payments in question constitute alimony. Property settlements are usually for a sum certain and payable over a finite period of time. *In re Albin, supra*, 591 F.2d at 97. Also to be noted is that the plaintiff's obligation to make payments under the aforesaid section of the divorce decree is enforceable by contempt. The *Albin* court felt that this was a factor to be considered in finding that such an obligation was in the nature of alimony rather than a property settlement. *Id.*

Another criterion outlined by the *Albin* court is whether the payments in question were intended for the economic safety of the recipient spouse. *Id.* The plaintiff asserts that the parties did not intend the defendant's award of a share in the retired pay receipts to constitute alimony inasmuch as it would not logically follow that known alimony payments of $400.00 would terminate in favor of an amount subject to variation and perhaps termination.[1] The plaintiff suggests the anomalous effect of treating the defendant's interest as alimony since it would increase her award (approximately nineteen percent, from $400.00 per month to $475.00 per month) at a time when the plaintiff's annual income would decrease (by twenty-five percent, from $28,063.80 per year to $20,693.64 per year).

It may be surmised from an examination of the applicable Hawaii statute that its

1. Pursuant to the Dual Compensation Act, 5 U.S.C. § 5532(b), an officer retired from active duty "may lose part of his retired pay if he takes Federal Civil Service employment."

*McCarty v. McCarty*, —— U.S. ——, ——, n. 14, 101 S.Ct. 2728, 2736 n. 14, 69 L.Ed.2d 589 (1981).

principal purpose is to place the recipient spouse on an equal footing with the payor spouse. By its very nature this entails a balancing of incomes and provides for the economic safety of the recipient spouse. *See* Hawaii Revised Statute, § 580–47, *supra.*

Having so construed the aforesaid Hawaii statute, it is not unusual that the divorce decree would allow a sure $400.00 monthly payment to become a relatively unsure one by applying a predetermined payment formula. The application of such a formula, for purposes of income balancing, is necessarily contingent upon the payor spouse's ability to make reasonable monthly payments. 24 Am.Jur.2d, *Divorce and Separation, supra,* at 630. Further, the recipient spouse is only entitled to the fixed share of the payor's net receipts.

The Court notes that at the time of the hearing the plaintiff was forty-nine years old and gainfully employed. He testified that his current employment did not result in any reduction in his retired pay receipts. Thus, although the defendant will receive larger payments under the formula being applied to the aforesaid retired pay receipts, the plaintiff too is earning other outside income not subject to this payment formula. Had the plaintiff's retirement pay decreased under 5 U.S.C. § 5532, so too would his payments to the defendant. This is consistent with the notion of income balancing and, as such, in no way reflects upon the true nature of support that inhere to these payments. Therefore, in this context, it certainly is not anomalous that the defendant's monthly payments increase at the time when the plaintiff's military pay receipts decrease.

The plaintiff next contends that the defendant's interest in his retired pay receipts was not computed by reference to her need for support but rather represented one-half of the retirement pay attributable to that part of the plaintiff's military career during which he was married to the defendant. As a general rule, pensions are a form of deferred compensation for past services rendered. 60 Am.Jur.2d, *Pensions and Retirement Funds,* § 2 (1972). A true property settlement settles property rights, determining, *inter alia,* the rights of the husband and wife in jointly-held property, and settling claims each party may have against each other.

In community property states, for instance, wages earned during the course of a marriage are considered community property as are pension payments payable during the marriage (provided the pension is not a gratuity but represents deferred compensation for services rendered during the marriage). 15 Am.Jur.2d, *Community Property,* §§ 42, 53 (1976). However, this view is subject to some qualification owing to an observation (albeit dictum) made by the United States Supreme Court in *McCarty v. McCarty,* —— U.S. ——–––––, 101 S.Ct. 2735–2736 (1981), to the effect that military pensions are different from other pensions and thus should be considered reduced compensation for reduced services and not deferred compensation at all.[2]

The plaintiff relies upon *McCarty, supra,* for the proposition that the award to the defendant of a fixed share in his retired pay receipts was illegal *ab initio* and, therefore, should not be considered a legal debt. After carefully reviewing the Supreme Court's ruling in *McCarty,* we find the plaintiff's argument to be without merit.

■ The holding in *McCarty* is a narrow one. It states that applicable federal law prohibits a state court from compelling a division of military retirement pensions, pursuant to state community property laws, upon the dissolution of a military retiree's marriage. This prohibition, however, does not prevent federal benefits payable to members of the armed forces from being "subject[ed] to legal process to enforce child support or alimony obligations." *Id.* at ——, 101 S.Ct. at 2740.

---

2. The *McCarty* Court, at ——, 101 S.Ct. at 2736, did not determine whether "federal law prohibit[ed] a State from characterizing retired pay as deferred compensation" inasmuch as the Court's ruling rested solely upon a finding "that the application of community property law conflict[ed] with the federal military retirement scheme...."

Hawaii, however, is a noncommunity property state. At the time of the entry of the divorce decree no Hawaiian state appellate court had passed on whether a nonvested federal military pension was a property interest divisible under the Hawaii Revised Statute § 580–47, *supra.* Therefore, the defendant's right to claim a portion of the plaintiff's military retirement pension at that time was by no means established, putative local practice notwithstanding. In any event, as heretofore noted, for purposes of applying the federal bankruptcy laws, this Court is not bound by the state court label as to what constitutes alimony. Rather, "consistent with the objectives of federal bankruptcy policy," it is the substance of the award that governs. *Erspan v. Badgett,* 647 F.2d 550, 555 (5th Cir. 1981).

Having examined the circumstances of the present case, in light of the factors alluded to in *Albin, supra* (and other pertinent criteria), the Court is of the opinion that the cumulative effect of the aforesaid considerations requires a finding that the defendant's 9¼–/26th interest in the plaintiff's net retirement pay receipts is in the nature of alimony and, accordingly, is not dischargeable in bankruptcy.

An appropriate Order will enter.