In re William Winston EDWARDS, Debtor.

Marian McLain EDWARDS, Plaintiff,

v.

William Winston EDWARDS, Defendant.

Bankruptcy No. 82–04562A.
Adv. No. 82–3057A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 25, 1983.

---

943

See also, Bkrtcy., 31 B.R. 113.

Richard E. Carne, Tucker, Ga., for plaintiff.

Edward A. Pilkington, Decatur, Ga., for defendant.

## MEMORANDUM OPINION

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the plaintiff's objection to the confirmation of the defendant-debtor's Chapter 13 plan. The plaintiff's objection raises the issue of the dischargeability of first and second mortgage obligations imposed on the defendant-debtor pursuant to a June 3, 1982 divorce decree. The parties filed cross-motions for summary judgment on May 26, 1983. In its

Order dated July 5, 1983, the Court determined that further findings of fact were required. Following an evidentiary hearing on August 24, 1983, the Court renders the following opinion.

## I. FINDINGS OF FACT

The plaintiff, Marian McLain Edwards, and the defendant-debtor, William Winston Edwards, had been married thirty-four years prior to their 1982 divorce. At issue in this proceeding is the following provision in the divorce decree issued by the Honorable Robert B. Struble, Judge of the Superior Court, Mountain Judicial Circuit:

IT IS FURTHER CONSIDERED, ORDERED, AND ADJUDGED that Defendant be and he hereby is ordered and directed to pay any outstanding encumbrances secured by the real property described above [the marital home], including but not limited to a promissory note in favor of the Bank of Clayton in the amount of $46,934.89 and an outstanding promissory note in favor of Macon Federal Savings & Loan Association with a monthly payment of approximately $181.00 and a balance of approximately $10,000.00.

The subject marital home had been the Edwards' residence for eleven years. The debt to the Macon Federal Savings & Loan Association is secured by a first mortgage on the residence. Mrs. Edwards has been able to stay current on her payments to the Savings & Loan. The second encumbrance, in favor of the Bank of Clayton, arose when Mr. Edwards borrowed money to purchase and assemble a truck kit for his personal business. Only one payment has been made on this debt which, as of August 24, 1983, was fifteen months in arrears.

At the time of the divorce, there was a great disparity in the earning power of Mr. and Mrs. Edwards. Mrs. Edwards worked as a waitress or a sales clerk during part of the marriage. In 1982, her gross income was $8,676.06. Presently, Mrs. Edwards is employed as a waitress and has a take home pay of $90.00 a week. In contrast, Mr.

Edwards made over $64,000.00 in 1981 as a trucker. As of the date of the evidentiary hearing, Mr. Edwards testified that he has a total monthly income of $2,361.00.

Testimony elicited from Mrs. Edwards depicts the cause for the divorce:

Question: Mrs. Edwards, would you characterize Mr. Edwards as having been a good provider during the course of the marriage?

Answer: Yes, sir.

Question: Was he a good provider up until the date of the divorce, or would you characterize him as a good provider up until that point?

Answer: No, sir. He was a good provider until September of '79 when he sold his truck and went to driving a company truck, and then in '80 on January 6th he left to go to Florida to take over a terminal manager's job for a trucking company for $350.00 a week, and after that, no. He never would send enough money home to pay the bills or to live on, and from that time on it went down hill. Then in April, my son and I went down to Florida for Spring vacation, and I found out he was living with another woman.

Transcript at 10–11.

Accordingly, the Court finds that the divorce was a direct result of Mr. Edwards' adulterous affair.

When Mrs. Edwards filed for divorce in May of 1982, Mr. Edwards took no part in the divorce proceedings. The uncontroverted testimony of Mr. Dennis Cathey, the attorney who represented Mrs. Edwards in the divorce proceedings, indicates that Mr. Edwards was personally served with the divorce complaint on one of his trips into the State of Georgia. Nonetheless, Mr. Edwards went into default.

The parties responsible for the divorce decree were Mrs. Edwards, her attorney, Mr. Cathey, and Judge Struble. Clearly, Mrs. Edwards and her attorney sought mortgage payments as an alternative to direct alimony payments to Mrs. Edwards for her maintenance and support. The following testimony by Mr. Cathey suggests that Judge Struble was in agreement:

Question: Did Judge Struble make any statements in your presence, then, that would lead you to quantify an amount which would be necessary for her maintenance and support?

Answer: Yes. We talked about what money she would need, and because of the disproportionate house payments, some probably $1,200 or $1,300—by house payment I'm talking about a combination of the first mortgage at the Savings & Loan in North Carolina and the second mortgage with the Bank of Clayton—it was a figure something like $1,200 or $1,300. We reached a point, as you do in most divorces, where there wasn't enough money to go around, but Mrs. Edwards articulated to the Judge, and he seemed to accept this, that if she could stay in her home—in other words, have her home paid for and she would not be required to put the payment out on her home, then she could make it with what she made. That was with the help of her children.

Transcript at 27–28.

Thus, it appears that Mr. Edwards' obligation to make house payments was in sole contemplation of Mrs. Edwards' need for maintenance and support. The Court must note that Mrs. Edwards received no other periodic alimony award. Mr. Edwards was, however, ordered to pay the balance of some medical bills which are not at issue in this case.

Finally, it appears that Mrs. Edwards had the option of receiving payments from her husband or having those payments made directly to the mortgagee. Explaining why Mrs. Edwards chose the latter option, Mr. Cathey stated:

[B]ecause the vice president at the bank had a good relationship with Winston [Mr. Edwards], I think Marian [Mrs. Edwards] thought that the bank could get more out of him than she could.

Transcript at 31.

Although the divorce decree did not use the words "alimony", "maintenance" or "support", the duty of this Court is to determine whether Mr. Edwards' obligation was, in-

deed, in the nature of "alimony, maintenance or support" within the ambit of the § 523(a)(5) exception to discharge.

## II. DISCUSSION

### A. DEBT PAYABLE DIRECTLY TO A THIRD PARTY MAY BE NONDISCHARGEABLE PURSUANT TO § 523(a)(5).

The first hurdle in applying § 523(a)(5) to the case *sub judice* is the literal language of the statute. By its terms, § 523(a)(5) applies only to debts "to the spouse". In this case, the debt owed by Mr. Edwards was to the mortgagees and not to Mrs. Edwards. Several cases have adopted this literal reading of the statute. *In re Daiker,* 5 B.R. 348, 351 (Bkrtcy.D. Minn.1980) states:

Where parties characterize a debt as alimony, support or maintenance, the court, under the Bankruptcy Reform Act, § 523(a)(5), must first determine if the debt is payable directly *to the spouse;* if it is not, then it is dischargeable no matter how the parties characterize it. (emphasis original).

In accord with *Daiker* is *In re Drumheller,* 13 B.R. 707 (Bkrtcy.W.D.Ky.1981) (citing *Daiker*) and *In the Matter Payne,* 13 B.R. 481 (Bkrtcy.D.Nev.1981).

However, the majority view allows the Bankruptcy Court to find a debt payable to a third party nondischargeable. *In re Thomas,* 21 B.R. 571 (Bkrtcy.E.D.Pa.1982); *In re Petoske,* 16 B.R. 412 (Bkrtcy.E.D.N.Y. 1982); *In re Eisenberg,* 18 B.R. 1001 (Bkrtcy.E.D.N.Y.1982) (dictum); *In the Matter of Hughes,* 16 B.R. 90 (Bkrtcy.N.D. Ala.1981); *In the Matter of Stranathan,* 15 B.R. 223 (Bkrtcy.D.Neb.1981); *In re Mullins,* 14 B.R. 771 (Bkrtcy.W.D.Okla.1981); *In re Ferradino,* 14 B.R. 196 (Bkrtcy.D.Nev. 1981); *In re Wells,* 8 B.R. 189 (Bkrtcy.N.D. Ill.1981).

The legislative history indicates that § 523(a)(5) was not intended to render dischargeable all support-related liabilities which involve payment by the debtor to third parties. Senator Dennis DeConcini

states in his floor statement with regard to § 523(a)(5):

If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or a divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support. of the debtor's spouse, the former spouse, or child. 124 Cong.Rec.S. 17,412 (daily ed. Oct. 6, 1978) (remarks of Senator DeConcini).

Holding an obligation to pay attorney's fees nondischargeable, *Wells,* 8 B.R. at 193, states:

Unlike payments to governmental entities like the Welfare Department, payments on account of an award of attorney's fees ... directly benefit the debtor's spouse in that they are payments which the spouse would otherwise have to make. "The award is to [the spouse] regardless of the method of payment." *In re Cornish,* 529 F.2d 1363, 1365 (7th Cir.1976). Such an award is not a debt assigned to another entity within the meaning and purview of § 523(a)(5)(A) of the Bankruptcy Code.

Section 523(a)(5)(A), coupled with the repeal of § 456(b) of the Social Security Act [42 U.S.C. § 656(b)] by Code § 328, has narrowed the scope of nondischargeable debts by specifically repealing such cases as *Williams v. Department of Social and Health Services, State of Washington,* 529 F.2d 1264 (9th Cir.1976). *Williams* held that a debtor who failed to make payments ordered in the divorce decree could be subject to a nondischargeable lien established by a welfare agency by virtue of its payment of the debtor's child support obligation.

However, this narrowing effect does not encompass all debts payable to third parties. Rather, the Court agrees with the statutory interpretation given in *In re Bell,* 5 B.R. 653, 655 (Bkrtcy.W.D.Okla.1980):

Thus, it would be a strained "dead letter of the law" construction to make nondis-

chargeable *only* alimony, maintenance, or support owed directly to a spouse or dependent, and perfunctorily render dischargeable all debts involving third parties. (emphasis original).

The counterveiling policies involved in this analysis are the apparent purpose of § 523(a)(5) to prevent the debtor from discharging his responsibilities to an ex-spouse or children, see *Eisenberg, supra,* and the goal of the Code to afford a debtor a fresh start through liberal discharge provisions. The Bankruptcy Courts have ample opportunity to balance these policies in their determination of whether a debt is actually in the nature of alimony, maintenance or support. Accordingly, this Court rejects the *Daiker* line of cases and proceeds to the next issue, to wit: whether or not Mr. Edwards' obligation to make the mortgage payments was in the nature of alimony, maintenance or support.

### B. FEDERAL LAW DETERMINES WHETHER A DEBT IS IN THE NATURE OF ALIMONY, MAINTENANCE OR SUPPORT WITHIN THE AMBIT OF § 523(a)(5).

█ It is a settled proposition that federal law determines whether a particular debt is a support obligation or part of a property settlement. H.R.Rep. No. 595, 95th Cong., 2d Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5865. Cases on this point are nearly uniform and too numerous to cite. But, the uniformity of the case law ends with that proposition. A myriad of tests have arisen in bankruptcy cases to decide this particular issue. These tests look to the substance of the obligation rather than to the labels imposed by state law or found in the agreement itself. *In the Matter of Hughes, supra.* Before examining all the factors, the Court reproduces two definitions of alimony heretofore used in the Bankruptcy Courts. *In the Matter of Brassard,* 11 B.R. 90, 93 (B.C.N.D.Ill.1981), states:

Typical alimony is characterized by persisting regular payments of specific sums, usually geared in some manner to what

the recipient's living expenses might be and calibrated also to the ability to pay of the person responsible for the payments. *In the Matter of Hughes,* 16 B.R. at 92, adds:

In simple terms, alimony may be awarded when one spouse needs to be supported and the other spouse is able to provide support. The respective needs and abilities are determined by comparing the income, earning power, future prospects, age, health, station in life, length of the marriage, and other factors. (cite omitted). The payment of alimony should preserve the economic status quo as it existed during the marriage. (cite omitted).

Although the Courts often articulate different factors, the determination of whether a debt is in the nature of alimony, maintenance or support hinges upon the individual circumstances of each case. *In re Hoover,* 14 B.R. 592 (Bkrtcy.N.D.Ohio 1981); *In re Brace,* 13 B.R. 551 (Bkrtcy.N.D.Ohio 1981); *In re Warner,* 5 B.R. 434 (Bkrtcy.C. D.Utah 1980); *In re Evans,* 2 B.R. 85 (Bkrtcy.W.D.Mo.1979). *In re Hoover,* 14 B.R. at 596, lists nine relevant factors:

1.) Disparity of earning power of the parties,

2.) Business opportunities,

3.) Level of education,

4.) Physical health,

5.) Probable future need for support,

6.) Fault in breaking up of marriage,

7.) Benefits innocent spouse would have received had the marriage continued,

8.) Whether the payments are intended as economic security, and

9.) The periodic nature of the debt.

Other cases have added to this list: *In re Petoske,* 16 B.R. 412 (Bkrtcy.E.D.N.Y.1982) (the nature of the obligation assumed; the location of the obligation in the separation agreement; the length of the marriage; whether children resulted who had to be provided for; the adequacy of support absent the debt assumption; and the parties' negotiations and understanding of the provision); *In re Huggins,* 12 B.R. 850 (Bkrtcy.

 

D.Kan.1981) (the "necessaries" test; the "time the debt was incurred" test; and the intent of the parties).

These factors overwhelmingly favor a finding that the debt owed by Mr. Edwards to the first and second ·mortgage holders was in the nature of alimony, maintenance or support. The most significant factors in this case are the intent of the parties at the time the divorce decree was entered, the disproportionate earning potential possessed by Mr. Edwards, and Mr. Edwards' culpability in breaking up the marriage.

Since Mr. Edwards was not present at the divorce proceedings, the Court infers that the divorce decree was a concurrence of the parties' intent to provide Mrs. Edwards permanent maintenance and support by compelling her ex-husband to upkeep the mortgage payments. The Court relies heavily on the testimony of Mr. Cathey in reaching this conclusion. Mr. Edwards argues that the Court should discount Mr. Cathey's testimony as being self-serving in light of his potential malpractice liability for improperly drafting the divorce decree. The Court rejects the view that Mr. Cathey's testimony is tainted and is self-serving because, whether or not the divorce decree used the words "alimony", "maintenance" or "support", the ultimate determination of the nature of the debt falls with this Court.

The relative earning power of the parties and their respective needs is also a crucial factor, both in its own right and as an indication of the intent of the parties. The Court has already documented Mr. Edwards' vastly superior earning potential and Mrs. Edwards' need for periodic payment to supplement her small income.

As a final matter, the equities of this Court do not lie with a debtor who abandoned his wife after thirty-four years of marriage. If the Court were to render the subject mortgage payments dischargeable, Mr. Edwards would be freed of his duty to support his wife after the completion of his Chapter 13 plan. While the pervasive policy of the Bankruptcy Code is to afford debtors a fresh start, the Court will not brighten the debtor's opportunity for a fresh start by casting his ex-wife into a more dismal predicament.

## III. CONCLUSIONS OF LAW

The obligation imposed on Mr. Edwards by the June 3, 1982 divorce decree is in the nature of alimony, maintenance or support and is, therefore, nondischargeable pursuant to Bankruptcy Code § 523(a)(5).

## ORDER

In accordance with the foregoing conclusion of law, it is hereby

ORDERED that Mr. Edwards' obligation to pay the Macon Federal Savings and Loan Association and the Bank of Clayton is nondischargeable;

ORDERED that the debtor's Chapter 13 plan cannot be confirmed as proposed; and

ORDERED that the parties must bear their respective costs of litigating this matter.