**In re Raphael G. ALTAVILLA a/k/a Ray Altavilla, Debtor.**

**Lillian G. ALTAVILLA, Plaintiff,**

v.

**Raphael G. ALTAVILLA a/k/a Ray Altavilla, Defendant.**

**Bankruptcy No. 82–00118–L.**
**Adv. No. 82–0286.**

United States Bankruptcy Court,
D. Massachusetts.

July 31, 1984.

T. David Houghton, Hyannis, Mass., for debtor-defendant.

Craig S. Johnson, Chatham, Mass., for plaintiff.

## MEMORANDUM AND ORDER

## RE: DISCHARGEABILITY OF DEBTS

THOMAS W. LAWLESS, Chief Judge.

Before the Court is the complaint of Lillian G. Altavilla to have two debts owed to her excepted from the effect of discharge under § 523(a)(5) of the Bankruptcy Code. Mrs. Altavilla, having obtained a decree nisi from the Barnstable Probate Court on April 10, 1981 (said judgment becoming final on October 10, 1981), claims that the order of the Probate Court requiring the debtor, Raphael Altavilla, to pay to her $10,000 in monthly installments of $166 was in the nature of an alimony award, for her support and maintenance, and not a property settlement as claimed by Mr. Altavilla. Additionally, and on the same basis, Mrs. Altavilla claims that the Probate Court order requiring the debtor to pay the principal interest and 1/12 pro-rata share of the real estate taxes on the property then owned by the parties for a period not to exceed six months ($693.30) is nondischargeable.

After consideration of the pleadings, memoranda, and the evidence at trial, I find as follows:

### FACTS

Mr. and Mrs. Altavilla were married for approximately twenty years prior to their divorce. Three children were born of the marriage, one of which was a minor (14 years old) at the time of the divorce. Mr. Altavilla's financial difficulties arose from

his decision to change his career as a brick-layer after some twenty years at that calling to enter the fishing business. He bought a boat, which subsequently rolled over on him, causing a loss of most of his fishing gear. Subsequently Mr. Altavilla obtained financing from a local bank and the Small Business Administration to build a new boat for deep-sea lobster fishing. Unfortunately, construction of the boat ran behind schedule, resulting in the loss of a whole fishing season. Mr. Altavilla fell behind on the loan payments on the boat which led to his bankruptcy filing in 1982.

On April 2, 1981, Lillian and Raphael Altavilla entered into a written stipulation which was incorporated and merged into the divorce judgment entered by the Probate Court. In that decree, under the caption "Division of Property", Mrs. Altavilla relinquished any claim to the two fishing vessels. The boat that had turned over was on blocks and had an estimated value of $10,000. The new boat was subject to various liens in the total amount of $145,-000. Testimony at trial indicated the value of the second boat was approximately $150,000 resulting in equity of approximately $5,000 in that boat.

By way of division of certain real property held by the Altavillas, the decree provides that the real property would be remortgaged for an additional $17,000, to the approximate extent of about $65,000. The additional funds obtained from refinancing the existing indebtedness of $47,000 would become the property of the husband. After certain deductions for unpaid accrued interest, the husband would receive approximately $13,000. Simultaneous with the refinancing, Mrs. Altavilla was to receive a deed of her husband's interest in the property and she was to be responsible for the $65,000 mortgage. It was agreed and the Probate Court so ordered that the wife would list the property for sale at an asking price of $90,000. Upon the sale of the property, any and all new monies in excess of the $65,000 mortgage would become the property of the wife. Following this provision the decree states that "[u]nder no circumstances is this clause to be construed or deemed alimony, but rather it is solely a division of property."

The decree further provides that, upon the signing of the stipulation, Mr. Altavilla would

execute a $10,000 promissory note, unsecured and without interest, payable in or within five (5) years, said payments commencing on January 1, 1982, to be paid in at least monthly installments of $166.66, it being the intention of this note that the husband can and will make payments on account to the extent of his ability as money is available, with the anticipated understanding that this note will be paid off as early as possible. This note is a further element of the division of property, and thus does not bear interest and is intended to evidence the husband's share in the division of the real estate proceeds of which he is to receive the $17,000 for the refinancing as above outlined. This $10,000 is not periodic or lump sum alimony, but rather a further obligation on the part of th [sic] husband arising out of the division of the property at 59 Captain Chase Road, South Yarmouth, Barnstable, Massachusetts.

The decree states that "[a]s a further part of this division of property," Mr. Altavilla would pay the principal, interest and a $1/12$ pro rata share of the real estate taxes on the property for a period not to exceed six months. This obligation is "in furtherance of this property division and is not to be construed nor intended to be alimony to the wife."

The decree further provides for the division of the personal property of the parties (to the wife), child support for the couple's minor child ($75 per week to be paid by the husband) and maintenance of medical coverage for the wife and the minor child until either the husband or wife remarries or until the wife obtained medical coverage from her employer, the Cape Cod Hospital. Clause (e) of the decree states that "[b]oth the husband and wife hereby waive any request or demand for alimony, one from the other, and further, waive any right to

any future division of property under Chapter 208, Section 34, . . ."

At the time the parties were undergoing the divorce proceeding, Mrs. Altavilla graduated from the nursing program at Cape Cod Community College. She was working at Cape Cod Hospital three days a week as well as part-time for a doctor in private practice. Mrs. Altavilla anticipated that upon becoming a registered nurse, she would begin nursing full time. Mrs. Altavilla sought the divorce, as she desired to strike out on her own and be independent in her new career. Mr. Altavilla opposed the divorce but his efforts in opposition thereto were fruitless.

Five months after the divorce decree, the real property was sold for $85,000. After payment of the $65,000 mortgage and the broker's fee, Mrs. Altavilla received approximately $17,000. She also received the $10,000 note, but no payments have been made on it or on the real estate taxes of $693.30. Mr. Altavilla received approximately $13,000 generated from the refinancing of the $47,000 mortgage on the house, as well as approximately $15,000 of equity in the two fishing vessels.

## CONCLUSIONS OF LAW

■ Section 523(a)(5) of the Bankruptcy Code prohibits the discharge of a debtor's alimony, maintenance or support obligations to his or her former spouse and children. Property settlements, on the other hand, are discharged. The burden of proving that the obligations imposed by the divorce decree are in the nature of support payments is on the party objecting to discharge, namely Mrs. Altavilla. *See In re Daviau,* 16 B.R. 421, 424 (Bankr.D.Mass. 1982).

■ Whether an obligation in a divorce decree is in fact one for support and thus nondischargeable depends upon whether the state court or the parties intended to create an obligation to provide for alimony, maintenance or support. *See In re Calhoun,* 715 F.2d 1103, 1109 (6th Cir.1983). This determination of intent is particularly difficult because the labels used by the parties or the divorce court in denominating obligations as 'alimony' or as a 'property settlement' are not conclusive, although due consideration of such terms are used in discerning the parties' and the state court's intention. *See Williams v. Williams,* 703 F.2d 1055, 1057–58 (8th Cir. 1983). Additionally, pertinent circumstantial evidence of the parties' intentions includes the following: whether the obligation is payable in installments over a substantial period of time or in a lump sum payment; whether the obligation terminates upon an occurrence such as the spouse's remarriage or death; whether the debt was allocated in lieu of a greater allowance of alimony; the length of the marriage; children from the marriage who require support; whether the support would be inadequate absent assumption of the debt; relative earning powers of the parties, both at the time of the divorce and thereafter; and, fault in breaking up the marriage. *See In re Alloway,* 37 B.R. 420, 425 (Bankr.E.D.Pa.1984); *In re Wesley,* 36 B.R. 526, 529 (Bankr.S.D.Ohio 1983); *In re Conrad,* 33 B.R. 601 (Bankr.N.D.Ohio 1983).

■ Applying these factors to the case at bar, I conclude that Mrs. Altavilla has not met her burden of proving that the $10,000 note is not dischargeable. The decree, as drawn up from the parties' settlement, is unambiguous in characterizing the obligation as a property settlement and not as alimony. The obligation to pay the note is absolute and does not terminate upon the death or remarriage of the wife. If the debtor's obligation terminated upon the death or remarriage of the wife, the debt could be characterized as support inasmuch as the obligation to support would have either ceased or transferred. *See In re Conrad, supra,* at 603–604. Moreover, the financial circumstances of the parties indicates that at the time of the divorce decree the wife had a more stable income and a greater expectation of increased income in the future. In light of the debtor's past performance and the large amount of secured indebtedness on his new fishing boat, the debtor's anticipated income from his fishing business was entirely speculative.

On the other hand, Mrs. Altavilla had the prospect of stable income for a relatively well-paying job as a registered nurse. I find that the financial circumstances of the parties does not warrant the inference that the $10,000 note was for the ex-wife's support.

The fact that the obligation contained in the note is payable in installments over a relatively long period of time (five years) rather than in a lump sum payment is usually indicative that the obligation is one for support. *See In re Wesley, supra,* at 530. However, I find that this inference should not be drawn here because the installment payment schedule is merely a recognition of the fact the husband did not have the ability to make a $10,000 lump sum payment. Indeed, even with respect to the husband's obligation to make the monthly payments, the divorce decree states that the husband "will make payments on account to the extent of his ability ...", leaving open the possibility of a deferral of the obligation if the husband did not have financial wherewithal to make the payments.

The $10,000 note, viewed in the context of the entire divorce decree and the financial circumstances of the parties, indicates that the $10,000 note was intended as a division of the marital property. Mr. Altavilla received $13,000 for the refinancing of the home and approximately $15,000 of equity in the two fishing vessels, a total amount of approximately $28,000. Mrs. Altavilla received the $10,000 note and approximately $17,000 from the sale of the home, a total amount of approximately $27,000. The amount and terms of these provisions, as well as the testimony of the parties, indicates the parties' intent to achieve a resolution of their marital affairs and a desire to conclude their dealings once the divorce decree became final. In light of this intent, it must be concluded that the obligation imposed constituted a property settlement that is dischargeable in bankruptcy.

■ With respect to the obligation to pay the real estate taxes in the amount of $693.30, however, I find that this obligation was intended by the parties to provide financial support for the wife until the real estate could be sold. Until the house was sold and the wife became a registered nurse, she was in need of help in making the payments on the house. The fact that the obligation is owed to a third party does not change this result. *See In re Edwards,* 33 B.R. 942, 945 (Bankr.N.D.Ga. 1983).

It is so Ordered.