**In re David McHENRY, Debtor.**

**Annie McHENRY, Plaintiff,**

v.

**David McHENRY, Defendant.**

**Bankruptcy No. 83–61497.
Adv. No. 84–6001.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Gary.

Feb. 27, 1989.
Findings of Fact, Conclusions of Law and Judgement June 9, 1989.

to amend his complaint adding Counts XIV, XV, and XVI likewise is denied.

John L. Kelly, Merrillville, Ind., for debtor.

John Hovanec, Lake Station, Ind., for plaintiff.

Jeff Schlesinger, Gary, Ind., for defendant.

## MEMORANDUM OPINION AND ORDER[1]

KENT LINDQUIST, Chief Judge.

### I

*Statement of Proceedings*

On January 4, 1984, the Plaintiff, the former wife of David McHenry, the Defendant–Debtor (hereinafter: "Debtor") filed her nondischargeability complaint pursuant to § 523. The complaint sounds in tort for fraud and conversion arising out of a state dissolutions proceeding, but does not specify what subsection of § 523 the Plaintiff is proceeding under, i.e. § 523(a)(2), (5) or (6). The Plaintiff's Civil Cover Sheet states this adversary is being brought pursuant to § 523(a)(2) which is fraud.

---

**1.** This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52 as made applicable by Bankruptcy Rule 7052.

The Plaintiff's complaint asserts as follows:

1. That on December 1, 1982, the marriage of the parties was dissolved by a decree of the Lake Superior Court under Cause No. 480–1913.

2. That the decree provided as part of the property settlement that the Plaintiff receive one (1) cadillac and the Debtor receive four (4) cadillacs.

3. That the Plaintiff never received said cadillac as awarded in the decree, as the Debtor testified subsequently that he could not deliver possession of the same when in truth the Debtor had constantly possessed the cadillac and used the same for his own benefit.

4. That as a result thereof, the state court ordered the Debtor to pay the equivalent value of said cadillac or $4,000.00 in lieu of delivery of possession thereof to the Plaintiff.

5. That the Debtor never intended to deliver possession of the cadillac to the Plaintiff or pay the $4,000.00 in lieu of possession, and filed his voluntary Chapter 7 bankruptcy.

6. That the above actions of the Debtor constituted "fraud, deception, trick, avoidance, perjury, and willful conversion on the part of the bankrupt, all within the meaning of 11 U.S.C. Sec. 523, et. seq.; and the same constitutes malicious injury by Debtor to Plaintiff herein, ..."

Pursuant to Order of Court of August 20, 1985, this adversary was set for trial on October 10, 1985.

The parties appeared for trial and orally stipulated that there was no genuine issue of material fact, and that an evidentiary hearing was not required. The parties agreed to file as a joint and stipulated exhibit, certified copies of the Divorce Decree between the parties entered December 1, 1982, as modified by Orders dated May 12, 1983, and August 25, 1983, and the Court would set a briefing schedule.

On December 9, 1985, the Debtor filed certified copies of the above State Court decrees and orders.

The original Dissolution Decree of December 1, 1982 was by Default in that the petitioner-Debtor did not appear at trial, and the Plaintiff–Respondent was awarded a 1978 cadillac.

It is also noted in this decree that two minor children were born of the parties' marriage. Custody of these two minor children was granted to the Plaintiff–Respondent, and the Defendant–Petitioner was ordered to pay $300.00 a month child support to Plaintiff–Respondent. In addition, other specific marital property was awarded to the respective parties. In particular the Plaintiff–Respondent was awarded the marital real estate located at 713 Georgia Street, and 2680 Pennsylvania Street, Gary, Indiana, and the Defendant–Petitioner was awarded certain real estate at 3633 Monroe Street, Gary, Indiana. The Defendant–Petitioner was ordered to pay all marital debts and hold the Respondent harmless therefrom.

In the Order dated May 12, 1983, the state court after hearing the evidence with both parties present ordered that the Petitioner deliver to the Respondent a 1977 Cadillac by May 14, 1983, and to effectuate "proper title ownership at said time to Respondent".

By Order of August 25, 1983, the state court after hearing the evidence with both parties present granted the Petitioner–Debtor's Motions for a *Nunc Pro Tunc* Order and to Correct Errors, and the Respondent–Plaintiff's Verified Rule to Show Cause, and entered money judgment versus the Defendant in the sum of $4,000.00 in lieu of an award of the 1977 Cadillac in that the evidence showed the Petition–Debtor could not deliver possession thereof.

The Plaintiff filed her brief on March 27, 1987 asserting in essence that the legal issue here is whether the $4,000.00 indebtedness of the Debtor to the Plaintiff is nondischargeable under § 523(a)(5) as being in the nature of alimony, maintenance or support, with other assertions of possible fraud, while her complaint apparently

alleges the debt is nondischargeable pursuant to either § 523(a)(2)(A) or § 523(a)(6).

## II

### Conclusions of Law and Discussion

No objection was made by counsel to the jurisdiction of this Court as to this matter and the Court finds jurisdiction to be present, and that this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157.

■ This Court, as a general rule, must give full faith and credit to a state judgment such as the State Court Dissolution Decree and Orders modifying that Decree. U.S.C.A. Const. Art. IV, § 1; 28 U.S.C. § 1738. The fact that the Plaintiff asserts that the State Court was erroneous in that the Defendant gave false evidence on the merits in the State Court proceedings, does not alter the situation. However, this Court may still determine under § 523 the *effect* of the State Court's findings and order of August 25, 1983, which modified the original Dissolution Decree of December 1, 1982, and granted the Plaintiff–Respondent a $4,000.00 money judgment in lieu of the Cadillac in these bankruptcy proceedings. That is, whether the indebtedness as adjudicated by the state court is nondischargeable in this Defendant's bankruptcy. The issue of whether the Defendant could not transfer the Cadillac to the Plaintiff and the award of $4,000.00 in lieu of the vehicle was tried on the merits in the State Court, who had proper jurisdiction over the person and subject matter and there was no evidence of fraud in obtaining jurisdiction. Thus, the State Court's determination was collateral estoppel on that issue. This determination after a trial on the merits will not be overturned or modified by this Court.[2] The right of the Plain-

**2.** A *pre*-petition state court judgment does not have *res judicata* (claim preclusion) effect in a subsequent nondischargeability proceeding in the bankruptcy court arising out of the same facts under § 523(a)(2), (4) or (6) as to whether the debt is *nondischargeable* as the mere fact that a creditor has reduced his debt to judgment should not bar further inquiry as to the true nature of the debt. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Pelfy*, Case No. 83–40107 (*Coate v. Pelfy*, adversary no. 83–4048 (J. Lindquist, unpub. opin. and order, Bankr.N.D.Ind., March 6, 1987). It is noted however, at footnote 10 of the *Brown v. Felsen* opinion, the Supreme Court indicated that the doctrine of collateral estoppel or issue preclusion may be applicable to prior state court judgments on the issue of nondischargeability, in a subsequent nondischargeability proceeding in the bankruptcy court, and would bar relitigation of those issues in the bankruptcy court in a subsequent nondischargeability proceeding if in adjudicating a state law question, a state court should determine, factual issues using standards identical to § 17 of the former Bankruptcy Act in the absence of counter-veiling statutory policy.

*Brown v. Felsen* dealt with the dischargeability of the type of debts described in sections 17(a)(2) and (4) of the predecessor Bankruptcy Act (now § 523(a)(2) and (4) of the present Bankruptcy Code). Section 17(c)(2) of the Act (as does § 523(c) of the present Code) also granted exclusive jurisdiction to bankruptcy courts to determine particular debts were dischargeable under sections 17(a)(2), (4) or (8) (§ 523(a)(2), (4) and (6) of the present Bankruptcy Code). As to § 523(a)(5) the state court has concurrent jurisdiction with the bankruptcy court. *Brown v. Felsen* does not prevent the bankruptcy court from giving *res judicata* (claim preclusion) or collateral estoppel (issue preclusion) effect to a state court judgment or order actually decided on the merits between the same two parties on the same issues as to the *validity, extent* or *amount* of the underlying state based claim arising out of a state court's proper exercise of its authority to adjudicate the respective rights and duties of the parties relating to their marital property by virtue of a dissolution decree which would not preclude exercise of the Bankruptcy Court's jurisdiction in deciding whether such a marital debt is *nondischargeable* under § 523(a)(5). *See In re Comer*, 723 F.2d 737 (9th Cir.1984); *In re Hogan*, 47 B.R. 124 (Bankr.W.D.Wis.1984); *In Matter of Brown*, 56 B.R. 954, 958–959 (Bankr. E.D.Mich.1986). The State Court's determination on the merits that the Debtor had a legal obligation to pay the Plaintiff $4,000.00 money damages in lieu of a transfer of the vehicle will not be vacated or modified by this Court, even if based on fraudulent evidence, since the State Court had jurisdiction over the person and subject matter to make that determination. Thus, the only debt that the Plaintiff can pray that this Court determine to be nondischargeable is the marital debt of $4,000.00 as ultimately determined by the State Court Order of August 25, 1983; not a debt based on fraud or conversion that may have occurred prior to the State Court adjudication of those issues on the merits. This court does have concurrent jurisdiction with the state court pursuant to § 523(c) and § 523(a)(5) to determine if that $4,000.00 money judgment is nondischargeable as a matter of federal bank-

tiff at the time of the Defendant's bankruptcy, pursuant to said Dissolution Decree, as modified, relating to the Cadillac, was that she had a $4,000.00 judgment in lieu thereof. This court cannot overturn or modify the findings and conclusions of the state court no matter how erroneous the Plaintiff may believe they are, and even if based on false testimony of the Debtor as jurisdiction of subject matter and the person was present in the state court.

■ The Supreme Court in examining the full faith and credit clause and 28 U.S.C. § 1738 held that "a federal court must give to a state court judgment the same preclusive effect as would have been given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). This general rule is limited of course by *Brown v. Felsen,* discussed at footnote 2, *supra.* In Indiana a party to a judgment generally may not collaterally attack a final judgment of a court of competent jurisdiction when the record is regular on its face; such a judgment is entitled to full faith and credit by courts of coordinate jurisdiction until set aside, either by appeal or by direct proceeding brought in the court rendering it for that purpose. *State of Indiana v. Dossett,* 174 Ind.App. 501, 368 N.E.2d 259, 262 (1st Dist.1977). Where a court has jurisdiction of the subject matter and of the person of the Defendant and renders a judgment not in excess of the jurisdictional power of the court, no judgment it may render within the issues is void, however erroneous it may be. *Id.* 368 N.E.2d at 262. Here, the Plaintiff did not appeal the state court finding and valid order of August 25, 1982, or directly attack the same in that court based on false testimony. Thus, the Plaintiff cannot now collaterally attack that courts findings as to

the validity, amount or extent of the Defendant's liability even though erroneous.

■ As stated in *Federated Department Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981), the *res judicata* or collateral estoppel "consequences of a final unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong."

■ However, while the state court judgment shall have preclusive effect in this court as to the nature and amount of the debt, even if clearly erroneous, this court will still have concurrent jurisdiction to determine whether it is nondischargeable under § 523(a)(5) since the state court clearly never decided that issue.

■ The issue before this Court is thus whether under Federal Bankruptcy Law the $4,000.00 money judgment is nondischargeable in the Defendant's Chapter 7 bankruptcy proceeding, not based on fraudulent evidence given by the Debtor in the state court pursuant to § 523(a)(2)(A), or a fraudulent refusal to turnover the vehicle by the Debtor based on conversion under § 523(a)(6), but based on whether said money judgment was in the nature of alimony, maintenance or support pursuant to § 523(a)(5).

This Court has had occasion to discuss this issue in the cases of *In re Rollins,* Case No. 83–60657 (*Tokash v. Rollins,* Adv. No. 83–6164) (Bankr.N.D.Ind., J. Lindquist, unpub. opin. February 6, 1987); *In re Helping,* Case No. 83–40459 (*Miller v. Helping,* Adv. No. 84–4001) (Bankr. N.D.Ind., J. Lindquist, unpub. opin., March 27, 1986); *In re Sells,* Case No. 83–61680 (*Sells v. Sells,* Adv. No. 84–6011) (Bankr. N.D.Ind., J. Lindquist, unpub. opin., October 1, 1986); *In re Ford,* Case No. 82–61211 (*Ford v. Ford,* Adv. No. 83–6210) (Bankr.N.D.Ind., J. Lindquist, unpub. opin. March 27, 1986). Rather than reiterate the criteria in determining whether a debt aris-

ruptcy law, i.e. whether or not it is in the nature of alimony, support or maintenance. Even though § 523 was not being considered by the state court, the parties had the same inducements to litigate the issue of the Debtor's liability for the 1977 Cadillac in the State Court as

they do here. The state court in deciding that issue was not deciding an issue that would be different than what this court would have to decide as to the validity, amount, or extent of the debt prior to determining its nature or nondischargeability.

ing out of a dissolution decree is nondischargeable in bankruptcy, the Court attaches hereto as Appendix "A" its opinion in *In re Rollins, supra.*

It is clear to this Court that, although the parties stipulated that no oral evidence need be submitted and that the Court should render its decision based on the State Court Decree and Orders, it is clear based on the record and case law applicable to § 523(a)(5), that this cannot be done.

The Court may require additional proof beyond the parties stipulation where the additional proof does not contradict the stipulation, but rather adds flesh and life to it and aides in presenting an understandable controversy to the Judge. *Insurance Co. of North America v. Northwestern Nat. Ins. Co.,* 494 F.2d 1192 (6th Cir.1974).

Accordingly, a bench trial and oral evidence will be needed to properly resolve this adversary proceeding on the merits in addition to the Court's consideration of the state court decree as modified. It is therefore,

ORDERED, that a Telephonic Status Conference be held on the 22nd day of March, 1989 at 11:00 o'clock A.M. to determine the time, length and course of the trial.

POST–TRIAL

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT[1]

I.

*Statement of Proceedings*

This Adversary Proceeding came on for bench trial on May 17, 1989 pursuant to Order of Court March 23, 1989.

Plaintiff appears by Attorney Hovanec. Defendant appears by Attorney Kelly. Submitted. Evidence and Arguments heard.

By way of procedural background, this Court by its Memorandum Opinion and Order of February 27, 1989 held that the Plaintiff could not collaterally attack in this adversary proceeding the state divorce decree in question based on allegations of fraud or false oath, under on § 523(a)(2) or conversion under § 523(a)(6), and that the sole issue to be tried was whether or not the $4,000.00 debt arising out of the Dissolution decree, as modified, was nondischargeable pursuant to § 523(a)(5) as being in the nature of a support in that this Court would give full faith and credit to the findings of the State Court as to the validity, extent, and amount of the marital debt while this Court had jurisdiction to determine the nature of the marital debt, i.e. whether it was in the nature of a property settlement or spousal support under § 523(a)(5).

II.

*Findings of Fact*

The parties agreed to file as a joint and stipulated exhibit, certified copies of the State Divorce Decree between the parties entered December 1, 1982, as modified by Orders of the State Court dated May 12, 1983 and August 25, 1983.

On December 9, 1985, the Debtor filed certified copies of the above State Court Decrees and Orders.

The original Dissolution Decree of December 1, 1982 was by Default in that the petitioner-Debtor did not appear at trial. Pursuant to the decree two minor children were born of the parties' marriage. Custody of these two minor children was granted to the Plaintiff–Respondent, and the Defendant–Petitioner was ordered to pay $300.00 a month child support to the Plaintiff–Respondent, as well as all reasonable medical, dental, optical and pharmaceutical expense for said minor children. In addition, in separate and succeeding paragraphs of the decree, other specific marital property was awarded to the respective parties. The Plaintiff was granted as her exclusive personal property, the various household goods of the parties as enumerated therein and a 1978 Cadillac, while the Defendant was granted as his exclusive personal prop-

1. This Judgment constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52 as made applicable by Bankruptcy Rule 7052.

erty "the dump truck, a certain 1970 Cadillac, and three other used Cadillacs". As to the real estate, the Plaintiff was awarded the real estate located at 713 Georgia Street, and 2680 Pennsylvania Street, Gary, Indiana, and the Defendant was awarded the marital real estate at 3533 Monroe Street, Gary, Indiana. The Defendant was ordered to pay all marital debts including the mortgage on the property located at 3533 Monroe Street, and hold the Respondent harmless therefrom.

In the Order dated May 12, 1983, the state court, after hearing the evidence with both parties present, ordered, among other things, that the Defendant deliver to the Plaintiff a 1977 Cadillac (by Scrivnor's error, this is actually the *1978* Cadillac referred to in the original decree,) and to "effectuate proper title ownership at said time to Respondent". The Court also awarded certain additional household goods located in the realty to the Defendant.

By Order of August 25, 1983, the state court, after hearing the evidence with both parties present, granted the Defendant's Motions for a *Nunc Pro Tunc* Order and to Correct Errors, and the Plaintiff's Verified Rule to Show Cause, and entered money judgment versus the Defendant in the sum of $4,000.00 in lieu of an award of the 1977 (1978) Cadillac in that the evidence showed the Defendant could not deliver possession thereof.

The only witness was the Debtor–Defendant.

He testified as follows:

1. That when the Dissolution decree was entered he was gainfully employed at United States Steel; that the Plaintiff was not employed.

2. That at the time of the Dissolution decree, the two minor children of the marriage were ages twelve and ten.

3. That both during the marriage, and at the date of Dissolution decree, the Plaintiff was the sole owner of 713 Georgia free and clear of liens; that the marital residence at 3533 Monroe was owned jointly by the parties and that the same had been acquired in 1983 with the Defendant providing all of the consideration for the $5,000.00 down payment for the purchase thereof (no evidence was submitted on the status of the real estate located at 2680 Pennsylvania awarded to the Plaintiff, i.e. whether the Plaintiff had acquired this property in her own name with her own funds, whether it was income property, or if there were any liens thereon which the Defendant had to assume and pay pursuant to the decree).

4. That the parties had been married 13 to 14 years and at the time of their marriage, the Defendant was 52 or 53 years of age while the Plaintiff was 34 years of age, and that the Plaintiff brought no assets of any value into the marriage.

5. That the 1978 (1977) Cadillac originally awarded o the Plaintiff in the decree for which the state court ordered a $4,000.00 money judgment in lieu thereof by its Order of August 25, 1983, was in working condition at the time of the decree but was not needed by the Plaintiff for gainful employment nor was it needed by the Plaintiff to transport the minor children to and from school.

### III.

#### *Conclusions of Law*

No objections were made by the parties to the jurisdiction of this Court and the Court finds this is a core proceeding pursuant to 28 U.S.C. § 157.

At the outset the Court would note some basic legal principles that apply to adversary proceedings instituted by a creditor to have a debt determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

In keeping with the purpose of the Bankruptcy Code, exceptions to the general rule of dischargeability of debts are to be strictly construed in favor of the Debtor. *In re Linn*, 38 B.R. 762 (9th Cir. BAP 1984); *In re Marino*, 29 B.R. 797 (D.C.N.D.Ind.1983). The exceptions to dischargeability must be narrowly construed against the creditor's objections, and confined to those plainly expressed in the Code. *In re Norman*, 25 B.R. 545 (Bankr.S.D.Cal.1982). This is done to effectuate the fresh start policies

of the Bankruptcy Code. *In re Levitan,* 46 B.R. 380 (Bankr.E.D.N.Y.1985); *In re Nicoll,* 42 B.R. 87 (Bankr.N.D.Ill.E.D.1984).

■ Although, the nondischargeability provision of the Bankruptcy Code has no provisions allocating the burden of proof as to adversary proceedings brought under it, the creditor must establish that the debt is nondischargeable and has the burden on each element. *In re Kreps,* 700 F.2d 372, 376 (7th Cir.1983); *In re Bowers,* 43 B.R. 333 (Bankr.E.D.Pa.1984); *Matter of Reinstein,* 32 B.R. 885 (Bankr.E.D.N.Y.1983); *In re Paley,* 8 B.R. 466 (Bankr. E.D.N.Y.1981). The creditor objecting to discharge of a debt in bankruptcy bears a heavy burden of proof to establish that the debt is squarely within the statutory exceptions. *In re Marino,* 29 B.R. 797 at 799, *supra.*

■ 11 U.S.C. § 523(a)(5) provides as follows:

(a) a Discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—....

\*      \*      \*      \*      \*      \*

(5) *to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child,* in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, *but not to the extent that—*

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; .... (emphasis added)

The legislative history of this particular section in the form of Legislative Statements indicates as follows:

Section 523(a)(5) is a compromise between the House bill and the Senate amendment. The provision excepts from discharge a debt owed to a spouse, former spouse or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony to, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child. (124 Cong Rec H11096 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978)).

*Reprinted in* Norton Bankruptcy Law and Practice, Bankruptcy Code § 523, *Legislative History and Comment.*

The Notes of the Committee on the Judiciary, House Report No. 95–595 state as follows:

Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language, in combination with the repeal of section 456(b) of the Social Security Act (43 U.S.C. 656(b) [former section 656(b) of Title 42, The Public Health and Welfare] by section 327 of the bill, will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. See, Hearings, pt 2, at 942. *What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.* Thus, cases such as *In re Waller,* 494 F.2d 447 (6th Cir 1974); Hearings, pt 3, at 1308–10, are overruled, and the result in cases such as Fife v. Fife, 1

Utah 2d 281, 265 P2d 642 (1952) is followed. This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse as determined under bankruptcy law considerations that are similar to a consideration of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. See Hearings, pt 3, at 1287–1290. (H R Rep No. 95–595, 95th Cong, 1st Sess 364 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6319)

*Reprinted* in Norton Bankruptcy Law and Practice, Bankruptcy Code § 523, *Legislative History and Comment.* (emphasis added.)

Norton Bankruptcy Law and Practice § 27.56 (Callahan & Co.1983), provides an informative discussion of the area of the dischargeability of family support, and thus to put the matter in proper perspective, the Court will take the liberty of quoting from this treatise at length. Norton states as follows:

Throughout the history of United States bankruptcy law, family support organizations have been excepted from discharge. Prior to statutory enactment, nondischargeability was based on the theory that the obligation to support a spouse or child was not a debt and that only debts could be discharged. Thus the first statutory exception to discharge for family support obligations was "merely declaratory" of existing law.[1]

The current exception of spousal and child support is found in Code § 523(a)(5). The duty to support a present or former spouse or child is the principal interest protected by the section.[2] Whether a duty of support exists depends on state law;[3] whether an obligation based on that duty is nondischargeable depends on federal law.[4]

If both the duty to support and the relationship between that duty and the debt whose dischargeability is questioned are clear, few problems are presented. In practice, however, it is difficult to establish the relationship between the duty and the debt, because a debtor-creditor relationship can exist between spouses (or former spouses) for reasons other than support, and it is often uncertain whether the debt has a nondischargeable support base or some other dischargeable base.

The courts have taken different approaches in determining whether the obligation is based on the duty to support or not. The major federal court approach,[5] espoused by Judge Learned Hand, confines the inquiry to whether the obligation arose out of discharges, or in any way expresses, the duty of support. If that question is answered affirmatively, the form of obligation is disregarded and the obligation is excepted from discharge. The second approach,[6] followed by the majority of state courts, focuses on the form of the obligation, as well as on the intent of the parties or of the matrimonial court; occasionally courts following this approach also consider the dependent spouse's need for or use of the payment.

---

1  *Westmore [Wetmore] v. Markoe,* 196 U.S. 68, 49 L.Ed. 390, 25 S.Ct. 172 (1904).

2  Louiseaux, *Domestic Obligations in Bankruptcy,* 37 Journal Nat Assoc. Ref In Bank 68 at N 16 (July 1963).

The term "support" includes the somewhat archaic distinctions between alimony owed to a former spouse, maintenance owed to a former spouse, maintenance owed to a legally separate spouse, and support owed to a spouse or child.

3  Without a state-imposed duty to support another, any obligation purporting to be based on it is dischargeable. *See* § 27.57. Neither federal statute nor federal common law creates a duty to support another.

4  Application of federal dischargeability standards is illustrated by cases based on Texas law which expressly forbids alimony or support awards to a divorced spouse. A duty that is sufficiently like the support duty has been found for federal dischargeability purposes. See § 27.58. *In re Warner,* 6 BCD 788, 5 BR 434 (BC D Utah, 1980).

5  See § 27.59. [*Citing, In re Adams,* 25 F.2d 640 (2d Cir.1928), where Judge Hand propounded the rule that the underlying duty and

not the terms of the obligation controls dischargeability].

6 See § 27.60.

The Federal Courts have consistently held that in the context of a bankruptcy discharge, whether an obligation is in the nature of alimony, maintenance or support is a matter to be determined by federal bankruptcy law and not state law. *In re Harrell*, 754 F.2d 902 (11th Cir.1985); *In re Williams*, 703 F.2d 1055 (8th Cir.1983); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984) (Held: although Indiana does not provide for alimony, the Bankruptcy Court was not bound by the treatment of the obligation in Indiana Courts); *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir.1983); *Erspan v. Badgett*, 647 F.2d 550, 554–55 (5th Cir.1981); *In re Mencer*, 50 B.R. 80, 83 (Bankr.E.D.Ariz.1985); *In re Seidel*, 48 B.R. 371, 373 (Bankr.C.D.Ill.1983).

The Court in *In re Harrell* correctly held as follows:

Debtor contends that his obligation to pay post-majority educational expenses and child support is dischargeable because he was not required under relevant state law to support his son past the age of majority. We do not accept this argument. For several reasons we reject debtor's premise, that an obligation is "actually in the nature of support" only if it could have been imposed under the relevant state law legal duty of support.

First, the language of § 523(a)(5) does not refer to a particular state law legal duty of support. If Congress had intended dischargeability to be determined by whether an obligation could be imposed under state law, it might have addressed dischargeability in those terms. Congress chose instead to describe as not dischargeable those obligations in the "nature" of support. We believe that in using this general and abstract word, Congress did not intend bankruptcy courts to be bound by particular state law rules.

This conclusion is directly supported by the legislative history of § 523(a)(5). The committee reports that accompanied the new bankruptcy code provide that "what constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not state law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6319. We take this legislative history as another indication Congress did not intend dischargeability to be determined by reference to a state law legal duty of support.

Most circuit courts of appeal that have considered the question have likewise concluded that state law does not determine whether a domestic obligation is dischargeable in bankruptcy. In *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984), for example, the court considered the effect on dischargeability of a provision under Indiana law that allowed alimony only when a spouse was incapacitated or when the parties agreed in writing to an award of alimony. *Id.* at 1316 & n. 4. The court did not follow the state law but looked instead to the substance of the obligation in question to determine if it was one for support. *Id.* at 1316. The court concluded that the parties intended to provide support "and therefore ... the obligation was 'in the nature of alimony, maintenance, or support' under federal law." *Id.* at 1317. Having determined that the obligation was in the nature of support under federal law, the court held that it was not dischargeable in bankruptcy. *Id.*

Similarly, in *Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir. 1983), the court observed that it was "not bound by the characterization of an award under state law." *Id.* at 1057. The court in *Williams* affirmed that a debtor's agreement to pay his wife's attorney's fees was "in the nature of support," even though under applicable state rules, the agreement would not be considered support. *Id.* at 1057. The court observed that "whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law." *Id.* at 1056.

The case we have considered that is most similar to the present case is *Boyle*

v. Donovan, 724 F.2d 681 (8th Cir.1984), which the court considered a debtor's obligation to pay educational expenses. The court rejected debtor's argument that since he had no legal duty under state law to pay the expenses, his obligation was dischargeable. Id. at 683. The court found that the parties had intended their agreement to function as support, and that this conclusion was not altered by the fact that state law did not require the undertaking. Id.

We are of like opinion in the present case, that the nature of debtor's promise to pay educational expenses and child support is not determined by the legal age of majority under state law. The bankruptcy court characterized the agreement to pay educational expenses as in the nature of support, and the only ground on which debtor has challenged that characterization on appeal relates to the state law legal duty as determined by the age of majority. We are persuaded by the language of § 523(a)(5), the legislative history of that section, and the weight of the case law that the absence of a state law duty does not determine that an obligation is dischargeable in bankruptcy. Accordingly, we affirm the district court's decision with respect to the nondischargeability of debtor's obligation to pay post-majority child support and educational expenses.

Id. at 904–905 (footnotes omitted).

See, also, In re Yeates, 807 F.2d 874 (10th Cir.1986), where the Court held that a debtor's obligation to a former spouse may be in the nature of support so as to be not dischargeable even though it would not qualify as alimony or support under applicable state law.

■ State law, however, should be looked to by the bankruptcy court as a criteria in indicating whether a given award is in the nature of or characterized as a property settlement and dischargeable or an award of support, alimony or maintenance and thus nondischargeable. In re Yeates, supra; In re Seablom, 45 B.R. 445 (Bankr.D.N.D.1984); In re Kagan, 42 B.R. 563 (Bankr.N.D.Ill.1984). Thus, the bank-

ruptcy court need not ignore well developed state law principles of domestic relations in determining whether a particular obligation is in the nature of support. In re Holland, 48 B.R. 874 (Bankr.N.D.Tex. 1984); In re Vogt, 14 B.R. 743 (Bankr. E.D.Va.1981). This is particularly true in light of the fact that there is no federal law of alimony and support, and all domestic relations law is of state origin. Matter of Holt, 40 B.R. 1009 (D.C.S.D.Ga.1984); In re Bonhomme, 8 B.R. 645 (Bankr. W.D.Okla.1981).

■ Dischargeability must be determined by the substance of the liability rather than the form. In re Spong, 661 F.2d 6, 9 (2nd Cir.1981).

■ The label placed on an obligation by the parties or a court is not necessarily determinative of its character as nondischargeable alimony, maintenance and support. Matter of Benich, 811 F.2d 943 (5th Cir.1987); In re Maitlen, 658 F.2d 466 (7th Cir.1981); In re Doyle, 70 B.R. 106 (9th Cir.BAP 1986); Matter of Story, 36 B.R. 546 (Bankr.M.D.Fla.1983). Although the label may be a factor to be considered it is not necessarily conclusive or dispositive and the test is the substance of the obligation and not the form or title. In re Cowley, 35 B.R. 520 (Bankr.D.Kan.1983). Thus, the label may be helpful in ascertaining the parties' and the state court's intention. In re Altavilla, 40 B.R. 938 (Bankr. D.Mass.1984). However, where necessary, a court must look beyond the language of the decree to the intent of the parties or the Court. Shaver v. Shaver, 736 F.2d at 1314, supra; In re Yeates, 807 F.2d at 878, supra; In re Calhoun, 715 F.2d at 1109, supra; Melichar v. Ost, 661 F.2d 300 (4th Cir.1981). In the final analysis, a court must attempt to ascertain the parties' and the divorce court's intent in determining whether an obligation created in a divorce decree is dischargeable in bankruptcy. In re Grimes, 46 B.R. 84 (Bankr.D.Md.1985); In re Bowers, 43 B.R. 333 (Bankr.E.D.Pa. 1984); In re Pody, 42 B.R. 570 (Bankr. N.D.Ala.1984); Stamper v. Stamper, 17 B.R. 216 (Bankr.S.D.Ohio 1982).

Various federal courts have enumerated many tests, factors, and guidelines to determine whether or not a given obligation flowing from a divorce decree is in the nature of a property settlement and dischargeable, or is in the nature of support, maintenance and alimony and nondischargeable.

The Seventh Circuit has spoken on the issue in *Matter of Coil.* There the Court stated:

> An indebtedness for a former spouse for alimony, maintenance, or support of the spouse or the couple's children which is memorialized in the divorce decree is not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5). An indebtedness in the divorce decree that merely divides the marital property, however, is dischargeable. *In re Maitlen*, 658 F.2d 466 (7th Cir.1981).

> \* \* \* \* \* \*

In *In re Woods,* [561 F.2d 27, 3 B.C.D. 750 (7th Cir.1977)] we noted that in determining whether an obligation memorialized in a divorce decree is dischargeable, the bankruptcy court must attempt to effectuate the parties' or the divorce court's intent. We discussed four factors that might assist the bankruptcy court in discerning what the parties of (sic) the divorce court intended: (1) whether the settlement agreement includes provision for payments to the exspouse; (2) whether there is any indication that the hold-harmless provision was intended to balance the relative incomes of the parties; (3) whether the hold-harmless clause is in the midst of provisions allocating property; and (4) whether the hold-harmless provision describes the character and method of payment. . . .

> \* \* \* \* \* \*

*The Woods factors, however, are not exhaustive.* We noted in *Woods* that the bankruptcy court was forced to rely on these factors because there was no evidence in the record indicating what the divorce court or the parties intended. . . . (Emphasis supplied).

*Matter of Coil,* 680 F.2d 1170, 1171–72 (7th Cir.1982).

In *Coil,* the Seventh Circuit upheld the bankruptcy court's holding that the state divorce decree which required that the debtor pay and hold his former spouse harmless from certain marital bills was a nondischargeable debt. The debts were for the purchase of the parties' automobile, a water softener and for household goods. The state decree divided the marital property and ordered the Debtor to pay $20.00 a week in child support. The ex-spouse testified she was reluctant to execute the settlement agreement which was incorporated into the decree because she thought the support payment was too low; however, she did so agree because the debtor agreed to assume the majority of the outstanding marital debts. The court in pointing out that the *Woods* factors are not exhaustive, noted that in *Woods,* the court was forced to rely on the factors set out therein because there was no evidence in the record indicating what the divorce court or the parties intended. In *Coil,* the court noted that there was such evidence based on the testimony of the ex-spouse.

In *Matter of Woods, cited* by the *Coil* Court, and which was rendered prior to the date of the Indiana Dissolution of Marriage Act and the Bankruptcy Reform Act of 1978, the Debtor pursuant to a Separation Agreement incorporated into a Divorce Decree was ordered to indemnify and hold harmless the wife from certain debts such as to a Bank for siding and air conditioning, and to a finance company and a retailer for household goods, etc. The Court noted that the fact that the award was termed a "property settlement" and did not purport to grant "alimony" in the general sense is not dispositive for it is the *basis* for the creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance, *citing Nichols v. Hensler,* 528 F.2d 304 (7th Cir.1976), and *White v. White,* 167 Ind.App. 459, 338 N.E.2d 749 (1975), *Matter of Woods,* 561 F.2d 29–30, *supra.*

In *In re Singer*, 787 F.2d 1033 (6th Cir. 1986), the Court set out certain factors it deemed relevant in determining the nature of the debt. These included the following:

(1) The relative earning abilities of the parties;

(2) The ages, and the physical and emotional conditions of the parties;

(3) The retirement benefits of the parties;

(4) The expectancies and inheritances of the parties;

(5) The duration of the marriage;

(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

(7) The standard of living of the parties established during the marriage;

(8) The relative extent of education of the parties;

(9) The relative assets and liabilities of the parties;

(10) The property brought to the marriage by either party;

(11) The contribution of a spouse as homemaker.

*Id.* at 1037.

Various other Courts have attempted to set non-exclusive laundry lists or checklists of factors for the Bankruptcy Court to consider in distinguishing between nondischargeable support, alimony, or maintenance, and a dischargeable obligation arising out of a division of property. *See e.g., In re Stone*, 79 B.R. 633 (Bankr.D.Md. 1987). The *Stone* Court set out the following factors:

1. Whether there was an alimony award entered by the state court.

2. Whether there was a need for support at the time of the decree; whether the support award would have been inadequate absent the obligation in question.

3. The intention of the court to provide support.

4. Whether debtor's obligation terminates upon death or remarriage of the spouse or a certain age of the children or any other contingency such as a change in circumstances.

5. The age, health, work skills, and educational levels of the parties.

6. Whether the payments are made periodically over an extended period or in a lump sum.

7. The existence of a legal or moral "obligation" to pay alimony or support.

8. The express terms of the debt characterization under state law.

9. Whether the obligation is enforceable by contempt.

10. The duration of the marriage.

11. The financial resources of each spouse, including income from employment or elsewhere.

12. Whether the payment was fashioned in order to balance disparate incomes of the parties.

13. Whether the creditor spouse relinquished rights of support in payment of the obligation in question.

14. Whether there were minor children in the care of the creditor spouse.

15. The standard of living of the parties during their marriage.

16. The circumstances contributing to the estrangement of the parties.

17. Whether the debt is for a past or future obligation, any property division, or any allocation of debt between the parties.

18. Tax treatment of the payment by the debtor spouse.

*Id.* at 638.

*See also, In re Grijalva*, 72 B.R. 334, 336 (S.D.W.Va.1987) (12 factors); *In re Anderson*, 62 B.R. 448, 454–455 (Bankr.D.Minn.1986) (10 factors); *In re Barnett*, 62 B.R. 661, 663 (Bankr.E.D.Mo.1986) (18 factors); *In re Seidel*, 48 B.R. 371, 373 (Bankr.C.D.Ill.1984) (10 factors); *In re Pody*, 42 B.R. 570 (Bankr.N.D.Ala.1984) (6 factors); *In re Altavilla*, 40 B.R. 938 (Bankr.D.Mass.1984) (7 factors).

The Court in *In re Goin*, 808 F.2d 1391 (10th Cir.1987), stated that several factors are pertinent to the Bankruptcy Court's determination of whether a debt is support. These are:

1. If the agreement fails to provide explicitly for spousal support, the Court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support;

2. When there are minor children and an imbalance of income, the payments are likely to be in the nature of support;

3. Support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and

4. An obligation that terminates on remarriage or death is indicative of an agreement for support.

*Id.* at 1392–1393, *citing, Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984).

The Seventh Circuit in the case of *In re Maitlen,* 658 F.2d 466 (7th Cir.1981), had occasion to construe a hold harmless provision as an Indiana Dissolution Decree, and affirmed the decision of the District Court for the reasons set forth in the District Court's opinion which the Seventh Circuit attached as Appendix A. In *Maitlen,* the Dissolution Decree incorporated a Property Settlement Agreement between the parties in which the Bankrupt agreed to make the mortgage payment as to the mortgage on the former marital residence which was awarded to the non-debtor wife. That obligation terminated upon the death or remarriage of the wife. The District Court decision which was affirmed by the Seventh Circuit stated as follows:

Division of property pursuant to a dissolution decree is treated as a debt dischargeable in bankruptcy proceedings. However, a provision for alimony or support is not dischargeable. *See* 11 U.S.C. § 523(a)(5) and its predecessor, former 11 U.S.C. § 35(a). The question in this case is whether the obligation to make mortgage payments was a support obligation or a property division. Since the dissolution in question occurred in 1974, it was pursuant to Ind.Code § 31–1–11.5–9, which became effective in 1973. That section eliminated the use of the word "alimony." Much Indiana case law on this question was decided under the prior

statute; the decisions revealed a dichotomy as to the meaning of the term "alimony." *See* the discussion in *Nichols v. Hensler,* 528 F.2d 304, 307–08 (7th Cir. 1976). However, in determining whether an obligation is a liability for support, the court must look to the substance of the obligation and not to labels imposed by state law. *Shacter v. Shacter,* 467 F.Supp. 64 (D.Md.), *aff'd,* 610 F.2d 813 (4th Cir.1979). Indiana decisions under prior statutes can still be considered for the distinctions they drew between property division and support, without regard to use of the term "alimony." Under the current Indiana statute, what was formerly termed alimony must be classified as either property distribution or maintenance. *See Johnson v. Johnson* [174 Ind.App. 408], 367 N.E.2d 1147 (Ind.App. 1977). The United States Court of Appeals for the Seventh Circuit in *In re Woods,* 561 F.2d 27 (7th Cir.1977), made a thorough consideration of Indiana law under the prior Indiana statute on the question of what distinguishes a property division from a support obligation. Since the prior Indiana decisions remain valid in regard to this question, *In re Woods,* provides the guidelines for the court in this case.

The obligation to make mortgage payments appears in paragraph 4 of what is styled a "Property Settlement Agreement" entered into by and between plaintiff and defendant on September 11, 1974. However, the use of such a term is "not dispositive." *In re Woods,* 561 F.2d at 29. It is apparent that the agreement in question did not concern itself solely with the division of property, despite the terms by which the agreement was identified. Paragraph 3 of the agreement provides that the husband will provide the wife a specified periodic sum for child support.

\* \* \* \* \* \*

The obligation in this case further differs from the obligation in *Woods* [561 F.2d 27 (7th Cir.1977)] in that the agreement in *Woods* said nothing about termination of the husband's obligation to pay the debts. In contrast, paragraph 4 of

the agreement in this case stated: "The obligation of the Husband to make said mortgage payments and to satisfy said mortgage indebtedness shall terminate upon the death or remarriage of the Wife prior to payment of said indebtedness in full." Termination of an obligation of the husband upon death or remarriage of the wife is an indication that the obligation is support rather than a division of property. *See Stanford v. Stanford* [170 Ind.App. 203], 352 N.E.2d 93, 94–95 (Ind.App.1976); *White v. White* [167 Ind. App. 459], 338 N.E.2d 749, 754–55 (Ind. App.1975).

\*   \*   \*   ·   \*   \*   \*

That paragraph 3 of the agreement in question provides that the husband will pay child support in certain amounts does not preclude the possibility that the mortgage payments provided in paragraph 4 would constitute support to the child or to the wife.

\*   \*   \*   \*   \*   \*

The Order of July 7, 1980 [of the Bankruptcy Court] was clearly incorrect in its application of an Indiana Statute. That order stated:

The provision in the decree which "ordered" the parties to perform the agreement appears to have amounted to nothing more than approving it. The decree does not contain anything to show that the court awarded support for the wife. In fact, the court could not have awarded her support after the dissolution without first finding, pursuant to an Indiana statute, that she was physically or mentally incapable of supporting herself.

The reference is to *Ind.Code* 31–1–11.5–9(c), dealing with final decrees of dissolution. That section states:

(c) The court may make no provision for maintenance except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of such incapacitated spouse to support himself or herself is materially affected, the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court.[2]

It is correct that the decree entered by the Tippecanoe Superior Court on November 20, 1974, contained no finding of incapacity. However, no such finding is necessary when an award of maintenance is based upon agreement of the

---

2. In 1984, I.C. 31–1–11.5–9(C) was amended and rewritten by P.L.150–1984, sec. 1, and now provides as follows:

(C) The Court may order maintenance in final decrees entered under subsections (a) and (b) after making the finding required under Section 11(e) on this Chapter.

Indiana Code 31–1–11.5–11(e) provides as follows:

(e) A court may make the following findings concerning maintenance:

(1) If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself is materially affected, the court may find that maintenance for that spouse is necessary during the period of incapacity, subject to further order of the court.

(2) If the court finds a spouse lacks sufficient property, including marital property apportioned to that spouse, to provide for that spouse's needs and that spouse is the custodian of a child whose physical or mental incapacity requires the custodian to forego employment, the court may find that maintenance is necessary for that spouse in an amount and for a period of time as the court deems appropriate.

(3) After considering:

(A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

(B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

(C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

(D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

parties. *Ind. Code* 31–1–11.5–10 provides in pertinent part:

> Agreements.—(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children.
>
> (b) In an action for dissolution of the marriage the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter....

Since the decree in this case was based on an agreement, the absence of a finding of incapacity does not indicate that the agreement as incorporated into the decree could not provide for maintenance or support for the wife.

This court, however, does not base its reversal of the order entered July 7, 1980 primarily on the incorrect reference in that order to the Indiana statute. Rather, for all the reasons set forth above, that order is incorrect in its general construction of the agreement in question and in its application of statutory and case law to that agreement.

*Id.* at 468–471 (Appendix A: District Court Memorandum of Decision and Judgment Order).

The Seventh Circuit in *Maitlen* upheld the entire decision of the District Court, and, in addition, stated as follows:

> This court has recently considered the issue of dischargeability of a debt arising out of an Indiana dissolution decree and settlement. *In re Woods* [561 F.2d 27 (7th Cir.1977)]. *Woods* enunciates principles for guidance in the interpretation of such agreements. Although certain of Indiana's substantive laws have been amended since the *Woods* facts developed, we believe the principles announced there are still valid.
>
> This case turns on the interpretation of paragraph 4 of the Maitlens' "Property Settlement Agreement." After careful review, we conclude that the District Court has properly interpreted the agreement and correctly applied the law under *Woods*. We, therefore, affirm the decision of the District Court for the reasons set forth in its opinion, which we attach as Appendix A.

*Id.* at 467.

This adversary proceeding, as opposed to those litigated in *Woods, Coil,* and *Maitlen, supra,* does not involve an Agreement of the parties that was approved by the State Court and incorporated into the Dissolution Decree whereby the Court would be called upon to construe the intent of the parties to the Agreement as to whether nondischargeable spousal maintenance was intended or a dischargeable property settlement. Here, the Dissolution was litigated on the merits and the State Court entered its Decree. In addition, this proceeding does not involve a situation wherein the Debtor was ordered to hold harmless the ex-wife from a joint marital debt of the parties and to pay a third-party creditor. Rather, this proceeding requires a determination by this Court as to the basis or intention of the State Court as to the $4,000.00 awarded directly to the ex-wife in lieu of the Cadillac automobile. To make that an analysis this Court must look at the original basis or intent of the State Court in awarding the Plaintiff the Cadillac in the original decree as the $4,000.00 lump sum payment was subsequently ordered in lieu of the Cadillac.

Often the Bankruptcy Court must glean the Court's intent from a dissolution decree that is either ambiguous, or although may not necessarily be ambiguous within its four corners, and does clearly spell out the state law basis for obligations, rights and duties of the respective ex-spouses, did not contemplate a subsequent bankruptcy by one of the spouses which would necessitate the application of the federal standards of § 523(a)(5) to the decree.

Often in such a situation, the testimony of the nondebtor spouse as to reason for the creation of the debtor's obligation arising out of the state court dissolution decree will provide sufficient evidence for the Court to determine the basis of the state court's decree. *See, e.g., In re Brown,* 36 B.R. 103 (Bankr.D.Kan.1983); *In re Mac-Donald,* 69 B.R. 259 (Bankr.D.N.J.1986). This is not the case here. For whatever reason, the Plaintiff chose not to testify and the only evidence introduced by the Plaintiff on the issue was through the testimony of the Debtor. His testimony certainly did not assist the Plaintiff in meeting her burden of proof.

There is no indication either from the language in the Decree, as modified, or based on the testimony of the Debtor that the State Court intended that the award of the Cadillac to the Plaintiff was for spousal maintenance rather than simply a property division.

After custody of the children was ordered, and child support was ordered for the children of the parties only in the form of monthly payments and medical, etc. expense at the outset of the Decree, the Decree in separate and distinct, succeeding paragraphs proceeds to divide the various marital property of the parties, including the Cadillac in issue. No payments of any kind were ordered for the Plaintiff anywhere in the Decree. The award of the Cadillac was equivalent to a lump sum award, and the obligation to deliver the vehicle to the Plaintiff did not terminate on her death or remarriage. This further indicates that spousal maintenance was not intended. There is no indication that the award of the Cadillac was to balance the respective incomes of the parties, or that the award of the Cadillac was made in lieu of spousal maintenance, that the Plaintiff relinquished maintenance rights in consideration for the Cadillac, or that spousal maintenance would be inadequate otherwise. Nor was there any indication in the Decree or from the evidence that the Plaintiff needed spousal maintenance at the time of the Decree based on her age, health, work skills and educational level. There are no findings of fact in the Dissolution Decree that the Plaintiff was physically or mentally incapable of supporting herself as opposed to the minor children, or that the circumstances called for rehabilitative maintenance. There were no findings of fact in the Dissolution Decree as to the financial resources of each party, including income from employment or elsewhere or their standard of living during the marriage. The award of the Cadillac was simply a part of the division of the marital assets and no more. It is therefore,

ORDERED, ADJUDGED, AND DE-CREED, that the $4,000.00 debt as set out in the Dissolution Decree, as modified, is not nondischargeable as support under § 523(a)(5) and is generally dischargeable in the Debtor's bankruptcy pursuant to § 727.

The Clerk shall enter this judgment upon a separate document pursuant to Bankr.R. 9021.